No. 13-60838

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

EDDIE CLELAND,
*Plaintiff*

VERSUS

ACADEMY SPORTS & OUTDOORS,
*Defendant*
_____

EDDIE CLELAND,
*Plaintiff-Appellant*

VERSUS

ACADEMY SPORTS & OUTDOORS,
*Defendant-Appellee*

_____

BRIEF OF APPELLANT
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

Keith Starrett, United States District Court Judge

DANIEL M. WAIDE                    McHARD & ASSOCIATES, PLLC

MISSISIPPI BAR NO. 103543         15 Milbranch Road
                                  Hattiesburg, MS 39402
                                  Telephone:  (601) 450-1715
                                  Facsimile:    (601) 450-1719
                                  E-mail: dwaide@mchardlaw.com


                    Attorneys for Plaintiff-Appellant

No. 13-60838

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## EDDIE CLELAND,
*Plaintiff*

## VERSUS

## ACADEMY SPORTS & OUTDOORS,
*Defendant*

_____

## EDDIE CLELAND,
*Plaintiff-Appellant*

## VERSUS

## ACADEMY SPORTS & OUTDOORS,
*Defendant-Appellee*

_____

## CERTIFICATE OF INTERESTED PERSONS

_____

The undersigned counsel of record for the Appellant Eddie Cleland certifies

that the following listed persons have an interest in the outcome of this case. These

representations are made in order that Justices of the Supreme Court and/or the

Judges of the Court of Appeals may evaluate possible disqualification or recusal

pursuant to Rule 13.6.1 of the United States Court of Appeals for the Fifth Circuit.

iii

Eddie Cleland.......................................................... PLAINTIFF-APPELLANT

Academy Sports & Outdoors................................DEFENDANT-APPELLEE

Samuel S. McHard, Esq.
Daniel M. Waide, Esq.
and the law firm of
McHard & Associates, PLLC ...........................................ATTORNEYS FOR
                                                                         PLAINTIFF-APPELLANT

Christopher Dove, Esq.
Johanna F. Norvell, Esq.
and the law firm of
Locke Lord LLP .............................................................ATTORNEYS FOR
                                                                DEFENDANT-APPELLEE

J. Randall Patterson, Esq.
Zachary B. Busey, Esq.
and the law firm of
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC ................................................. ATTORNEY FOR
                                                                 DEFENDANT-APPELLEE

Honorable Keith Starrett................PRESIDING DISTRICT JUDGE IN THE
                                                  UNITED STATES DISTRICT COURT
                                       SOUTHERN DISTRICT OF MISSISSIPPI
                                                  EASTERN DIVISION

Honorable Michael T. Parker .........PRESIDING MAGISTRATE JUDGE IN
                                              THE UNITED STATES DISTRICT
                                            COURT SOUTHERN DISTRICT OF
                                            MISSISSIPPI EASTERN DIVISION

CERTIFIED, on this the 3rd day of February, 2014.


                                     _/s/ Daniel M. Waide_____
                                       DANIEL M. WAIDE

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful because this civil action presents a question of first impression under Mississippi law concerning the discharge of an employee because of his political affiliations as a violation of public policy in Mississippi.

This case also involves important issues concerning the requirements of *McArn v. Allied Bruce Terminix Co. Inc*, 626 So.2d 603 (Miss. 1993) and malicious interference with employment.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS .................................................. iii, iv

STATEMENT REGARDING ORAL ARGUMENT ...............................................v

TABLE OF CONTENTS...................................................................... vi, vii

TABLE OF AUTHORITIES .................................................................. viii

     CASES ................................................................................. viii, ix

     OTHER AUTHORITIES ...............................................................x

STATEMENT OF JURISDICTION........................................................xi

STATEMENT OF THE ISSUES............................................................ xii

BRIEF

STATEMENT OF THE CASE................................................................1

STATEMENT OF THE FACTS .............................................................2

STANDARD OF REVIEW ...................................................................7

SUMMARY OF ARGUMENT ..............................................................7

ARGUMENT I.................................................................................10

     THIS CASE SHOULD BE CERTIFIED TO THE MISSISSIPPI
     SUPREME COURT TO CLARIFY WHETHER MISSISSIPPI WOULD
     RECOGNIZE A PUBLIC POLICY EXCEPTION TO THE
     EMPLOYMENT-AT-WILL DOCTRINE FOR AN EMPLOYEE
     WRONGFULLY TERMINATED FOR REFUSING TO SUPPORT
     POLITICAL CANDIDATES.

ARGUMENT II ...............................................................................17

PURSUANT TO *McARN V. BRUCE ALLIED TERMINIX,* WHETHER CLELAND MUST PLEAD WITH SPECIFICITY THE LEGAL NAME OF THE ILLEGAL ACT, AND WHETHER CLELAND SHOULD BE ALLOWED TO AMEND HIS COMPLAINT TO SPECIFICALLY ALLEGE OTHER ILLEGAL ACTS.

A. Framework for a Retaliatory Discharge Claim Under Mississippi Law ....................................................................................................17

B. The Conduct Which Cleland Refused To Do and Reported Was Criminally Illegal ..................................................................................19

ARGUMENT III .......................................................................................22

WHETHER CLELAND SHOULD BE ALLOWED TO AMEND HIS COMPLAINT TO STATE A CLAIM AGAINST INDIVIDUAL DEFENDANT LOUIS TENNEY WHERE SAID AMENDED COMPLAINT WOULD DESTROY DIVERSITY AND REMAND THE MATTER TO STATE COURT.

A. Framework for Claim of Tortious Interference ........................................22

B. Issues of Intent are for a Trier of Fact ....................................................26

CONCLUSION ........................................................................................27

CERTIFICATE OF COMPLIANCE....................................................29

CERTIFICATE OF SERVICE ............................................................30

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Collins v. Collins,* 625 So.2d 786 (Miss.1993) ................................................22, 23

*Cook v. Wallot*, 2013 WL 1883522 (Miss. Ct. App. May 7, 2013) ..................15, 16

*Davis v. Louisiana Computing Corp.,* 394 So.2d 678 (La. COA 1981) ................13

*DeCarlo v. Bonus Stores, Inc.*, 989 So.2d 351 (Miss. 2008) ..................................18

*Duhart v. State*, 927 So.2d 768 (Miss. Ct. App. 2006) ...........................................20

*Eddington v. Fitzmaurice*, 29 Ch.Div. 459 (1885) .................................................27

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) .............................................10, 11, 12

*Gibson v. Estes*, 338 Fed. Appx. 476 (5th Cir. 2009) ......................................23, 24

*Hammons v. Fleetwood Homes of Miss.*, Inc., 907 So.2d 357
(Miss. Ct. App. 2004) ........................................................................................18, 20

*Hubbards v. Spokane County,* 146 Wash.2d 699 (2002) ........................................15

*Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394 (5th Cir.1986) ..............11, 16

*Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss. 1981) ............ 14, 15, 17

*Laws v. Aetna Finance Co.*, 667 F.Supp. 342 (N.D. Miss. 1987) ...............10, 11, 12

*Levens v. Campbell,* 733 So.2d 753 (Miss.1999) ....................................................23

*Lockheed Aircraft Corp. v. Superior Court of Los Angeles County,* 171 P.2d 21
(Cal. 1946) ...............................................................................................................13

*Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242 (5th Cir.1997) ..............................7

*McArn v. Allied Bruce Terminix Co. Inc.*
626 So.2d 603 (Miss. 1993) ...........................vii, xii, 8, 9, 10, 11, 14, 17, 18, 20, 22

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir.1992)...................................7, 8

*Medina v. Mims Oil Co.,* 2005 WL 1629800 (N.D. Miss. July 11, 2005) .............15

*Nelson v. State*, 32 So.3d 534 (Miss. Ct. App. 2009) ..............................................20

*Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058 (5th Cir. 1993)...............21, 25

*Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437(Miss. 1999)..........18, 20

*Priester v. JP Morgan Chase Bank,* 708 F.3d 667 (5th Cir. 2013) .............9, 25, 26

*Santiago v. People of Puerto Rico*, 154 F.2d 811 (P.R. 1946) ...............................13

*Schroeder v. Greater New Orleans Federal Credit Union*, 664 F.3d 1016
(5th Cir. 2011)..........................................................................................................26

*Shaw v. Burchfield*, 481 So.2d 247 (Miss. 1985) ..................................................23

*U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) .............26, 27

*Vulcan Last Co., v. State,* 217 N.W. 412 (Wis. 1928)..............................................13

*Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir. 1989) .......................24

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005).........................................18

OTHER AUTHORITIES:

28 USC § 1291 .......................................................................................xi

28 USC § 1332 .......................................................................................xi

18 U.S.C.A. § 922(m) ........................................................................9, 19

F.R.C.P. § 12(b)(6)..................................................................................7

Miss. Code Ann. § 79-1-9 ...........................................................13, 14, 15

Miss. Code Ann. § 97-9-63 .....................................................................19

Miss. Code Ann. § 97-21-33 ...................................................................20

Miss. Code Ann. § 97-21-59.............................................................19, 20

## **STATEMENT OF JURISDICTION**

The District Court asserted diversity jurisdiction over this action pursuant to 28 USC § 1332. This Court has jurisdiction over the appeal from a final judgment of the District Court pursuant to 28 USC § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1. Whether Mississippi Courts should recognize an action for discharge in violation of public policy where an employee is discharged by his employer for refusing to exhibit support for, and vote for, certain candidates for election.

2. Whether the conduct for which Cleland was terminated for reporting/refusing to participate was criminally illegal such that a discharged employee can maintain a claim for retaliatory discharge under Mississippi law in violation of public policy pursuant to *McArn v. Allied Bruce Terminix Co. Inc*, 626 So.2d 603 (Miss. 1993).

3. Whether a discharged employee can maintain an action against his supervisor for malicious interference with employment and be allowed to amend his Complaint to do so when timely.

## STATEMENT OF THE CASE

The Plaintiff - Appellant Eddie Cleland (hereinafter "Cleland") filed his Complaint on December 12, 2012 in the Circuit Court of Lamar County, Mississippi. ROA 13-60838 15. Defendants - Appellees Academy Sports & Outdoors (hereinafter "Academy") and Louis Tenney (hereinafter "Tenney") (collectively "Defendants") removed the case to the United States District Court for the Southern District of Mississippi, Hattiesburg Division on January 17, 2013 alleging fraudulent joinder. ROA 13-60838 6. Defendants filed their Motion to Dismiss on February 5, 2013 which was stayed by the Court pending ruling on Cleland's Motion to Remand. ROA 13-60838 64. Cleland file his Motion to Remand on February 6, 2013. ROA 13-60838 91.  The Motion to Remand was denied by the District Court on May 9, 2013 and Tenney was dismissed as a Defendant. ROA 13-60838 172. Cleland file his Motion for Leave to File Second Amended Complaint on May 13, 2013 to include claims against Louis Tenney. ROA 13-60838 182. The District Court entered a Memorandum Opinion and Order granting Defendants' Motion to Dismiss and dismissing all claims on August 26, 2013. ROA 13-60838 227. The District Court also denied Cleland's Motion for Leave to File Second Amended Complaint. ROA 13-60838 227. A final judgment of dismissal was entered on August 26, 2013. ROA 13-60838 248.  Cleland filed his Motion for Relief from Judgment on September 5, 2013, which was denied by

the District Court in its Memorandum Opinion and Order on October 24, 2013, and from which this appeal was taken. ROA 13-60838 249, 266.

## STATEMENT OF FACTS

Eddie Cleland was hired by Academy beginning in September of 2010 with a salary of approximately $42,000 a year plus bonuses. In November of 2011, Cleland began working at Academy Store 108 in Hattiesburg, Mississippi (hereinafter the "Hattiesburg Academy") as a manager. He was later terminated on November 6, 2012, election day. ROA 13-60838 67.

Louis Tenney has served as the Store Director at the Hattiesburg Academy since its grand opening. Tenney is a staunch and outspoken liberal who is closely politically associated with the Democratic party. During Cleland's employment at the Hattiesburg Academy, Tenney learned of Cleland's conservative political beliefs and Cleland's individual preference for certain Republican candidates in the 2012 elections. Over the course of Cleland's employment at the Hattiesburg Academy, Tenney made it very clear to Cleland that he strongly disagreed with Cleland's political beliefs and strongly disapproved of them. As a result, Tenney created and fostered a hostile work environment for Cleland, and purposefully placed Cleland in situations to harm Cleland's employment record with Academy. ROA 13-60838 67-68.

Tenney often polled Hattiesburg Academy employees as to who they were voting for in the upcoming election. If employees refused to participate or expressed preference for Republican candidates, Tenney would refer to them in a degrading manner as "conservatives" and harass them for their political views. Tenney had informed Cleland and other Hattiesburg Academy employees that if they would change their conservative political beliefs and instead support Democratic Party candidates, the employee's rise "up the ladder" at Academy would be quicker and easier. Cleland rejected such improper and illegal intimidation. Tenney purposefully, and because of Cleland's and others' political beliefs, held employees back who would otherwise be eligible for raises and advancements within Academy. ROA 13-60838 67-68.

Tenney held Cleland to an improper standard which differed from any standard applied to any of the other managers on staff at the Hattiesburg Academy. As a result of Cleland's political beliefs, Cleland was given tasks and responsibilities that were outside of Academy's officially articulated expectations. Despite these higher standards, Cleland complied. ROA 13-60838 68.

 Cleland was "pretextually" reprimanded by Tenney in regards to alleged improper changes to employee time cards. In fact, it was common practice to make changes to errors on employee time cards. These "reprimands" were made solely because Tenney sought to have Academy terminate Cleland's employment. The

manager who opened on Sunday mornings was required to review errors on employee time, finalize the weekly time report, and submit the report by approximately 11:00 a.m. Tenney knew that it was common practice for managers to correct time clock errors and that other managers made the same corrections. Only Cleland was reprimanded and written up for his actions. Had Cleland failed to make the correction, Cleland would have been reprimanded for failing to finalize the time card reports. ROA 13-60838 186.

Four days after the initial corrective for time card changes, Cleland again made changes to a time card without first talking with the employee. Cleland attempted to contact the employee, but was unsuccessful. Cleland later spoke with the employee, who acknowledged the error on the time cards, and the correction. Despite this acknowledgement by the employee, Cleland was again reprimanded. Cleland only signed the reprimands because failure to do so warranted immediate termination. ROA 13-60838 186.

Tenney, improperly and with malicious intent, reprimanded and issued written correctives against Cleland with the purpose of interfering with Cleland's employment relationship with Academy. ROA 13-60838 186.

Prior to the reprimands, Tenney also asked Cleland to alter/forge information on ATF Form 4473, which is the form required in order to purchase a firearm at Academy. Cleland refused. ROA 13-60838 260-265.

4

Cleland further explained and complained to Tenney that Tenney:

a. Improperly retained completed 4473 forms in an unsecure location at the front of the store rather than in a secure location behind the Fire Arms counter;

b. Turned a blind eye and deaf ear to Hattiesburg Academy associates being permitted to "cheat" in order to become certified to sell firearms. Said "cheating" involved receiving assistance while taking the certification test. Cleland protested and complained about said practices; and

c. Allowed employees to take training tests known as LMS modules for other Hattiesburg Academy employees in order to avoid paying employees for the time necessary to take the test themselves.

ROA 13-60838 187.

Cleland made numerous verbal complaints to Tenney about his discriminatory, unethical, and illegal actions, and also made complaints to Academy's District Manager, Daryl Fletcher (hereinafter "Fletcher"). Fletcher made no attempt to correct the discrimination, criminal actions, unethical conduct, or hostile work environment. As a result of Fletcher's intentional failure to address and correct the misconduct of Tenney complained of by Cleland, and highly upset by the discrimination, criminal law violations and unethical conduct of Tenney,

Cleland formally reported the acts to Academy's Human Resources by means of an email dated August 18, 2012. ROA 13-60838 188.

The August 18, 2012 formal complaint clearly outlined:

a.  criminal and unethical acts which Tenney was demanding Cleland and others to perform;

b.  the numerous Academy policies which Tenney had repeatedly violated; and

c.  Tenney's illegal and improper discriminatory treatment of Cleland and other Hattiesburg Academy employees who held conservative and/or Republican beliefs which created a hostile work environment.

Following the August 18, 2012 formal complaint, Cleland was informed that his performance was deficient and was given a plan for improvement, an action plan. Cleland was not given time nor the opportunity to implement the wholly pre-textual "action plan." Instead, Cleland was told that it didn't matter what Cleland did, the decision to terminate Cleland had already been made. ROA 13-60838 188.

As a result of Cleland's complaints and refusal to engage in unethical and criminal conduct, Cleland was fired on November 6, 2012, Election Day.

Cleland's discharge was caused in substantial part by the following:

a.  Cleland's refusal to participate in criminal and unethical activity;

6

b. Cleland's reporting of illegal and unethical activity to Academy superiors; and

c. Cleland's political beliefs as a conservative Republican and his refusal to support political candidates favored by Tenney.

ROA 13-60838 189.

## STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). Also, the court may not look beyond the pleadings in ruling on the motion. *Id.*

This Court reviews both a motion to dismiss and a motion for summary judgment under a *de novo* standard of review. In the former, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).

## SUMMARY OF THE ARGUMENT

There has been no discovery in this matter, no answer filed by Defendants, and the allegations of the Complaint and the pleadings must be accepted as true for

the purposes of this appeal. See *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992).

Cleland has pled that he was terminated by Academy, in violation of public policy, for refusing to support certain political candidates in the November 2012 election. This is a matter of first impression in Mississippi, and the District Court refused to hold that Mississippi would recognize a public policy exception to Mississippi's rigid at-will employment doctrine for the termination of an employee who refuses to alter their political support for candidates in an election. If this Court does not find that, as a matter of Mississippi law, an employer can be liable for retaliatory discharge, then the question should be certified to the Mississippi Supreme Court.

This Court should reverse the Motion to Dismiss in favor of Academy because the District Court further erred in dismissing Cleland's *McArn* claim because the District Court found that the criminal act was not a "forgery." ROA 13-60838 236-37. Cleland had clearly pled in his Amended Complaint that he was terminated for his "refusal to participate in criminal activity" and for "reporting of illegal and unethical activity." ROA 13-60838 27. The District Court, in error, made a factual determination and held that Cleland's labeling of the illegal act as a forgery was fatal and dismissed the claims. ROA 13-60838 237. Cleland requested leave to amend the Complaint to consider the illegal act as subornation of perjury

and in violation of 18 U.S.C.A. § 922(m), but the District Court denied the leave to amend and dismissed Cleland's *McArn* claims. ROA 13-60838 245-247. Accordingly, it was error for the District Court to dismiss the claims simply over the title Cleland gave to the illegal acts, which would be a factual determination, made in error, on Academy's Motion to Dismiss.

The District Court also erred by refusing to allow Cleland to amend his Complaint to plead in more detail a claim for malicious interference with employment against Tenney. The District Court held that the amendment was improper because it would destroy diversity and because an action for malicious interference with employment could not be maintained against Tenney. ROA 13-60838 245-267. Mississippi Courts and Mississippi law have long held that an action for malicious interference can be maintained against Tenney, and accepting the facts as pled in the Second Amended Complaint as true, the Court erred by dismissing Tenney and refusing to allow Cleland to amend his Complaint. Cleland could prevail on his claim simply by showing that Tenney interfered with his employment without justifiable cause in a way that was calculated to cause him damage. The amendment might destroy diversity, but under *Priester v. JP Morgan Chase Bank*, 708 F.3d 667 (5th Cir. 2013), Cleland should have been allowed leave to amend.

# ARGUMENT I.

## THIS CASE SHOULD BE CERTIFIED TO THE MISSISSIPPI SUPREME COURT TO CLARIFY WHETHER MISSISSIPPI WOULD RECOGNIZE A PUBLIC POLICY EXCEPTION TO THE EMPLOYMENT-AT-WILL DOCTRINE FOR AN EMPLOYEE WRONGFULLY TERMINATED FOR REFUSING TO SUPPORT POLITICAL CANDIDATES.

The laws of Mississippi clearly favor the employer when terminating an employee and the law is clear that Mississippi is an "at-will" employment state. However, the Courts of Mississippi have carved out public policy exceptions to this steadfast rule. It is true that this Court cannot make Mississippi law[1], but this Court can apply how the Courts of Mississippi would rule, based upon the *Erie*-bound guess doctrine.[2]

In *McArn v. Allied Bruce Terminix Co., Inc.*, 626 So.2d 603 (Miss. 1993), the Mississippi Supreme Court adopted the public policy exception to Mississippi's employment-at-will doctrine. The Mississippi Supreme Court was not the first Mississippi court to rule in favor of the public policy exception. The now Senior Judge Glen Davidson, in *Laws v. Aetna Finance Co.*, 667 F.Supp. 342 (N.D. Miss. 1987), correctly held:

> The court is of the opinion that the Mississippi Supreme Court would view the case *sub judice*, where an employee-at-will has

---

[1] This Court should certify these questions of public policy to the Mississippi Supreme Court to clarify whether Mississippi would recognize a public policy exception to the employment-at-will doctrine for political retaliation.

[2] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

> allegedly been discharged for refusal to commit illegal acts on behalf of his employer, as an appropriate situation in which to create a narrow public policy exception to the termination at will rule.

> *Id* at 346.

Additionally, this Court has cautioned, in the *Erie* context: "We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.1986). The Mississippi Supreme Court would not find that Academy is entitled to dismissal at this phase, thus any ruling on the dispositive issues of this case must be deferred at this juncture.

In *McArn*, Justice Sullivan, writing for a unanimous Mississippi Supreme Court, held:

> We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and this should be so whether there is a written contract or not…

> *McArn* at 607.

The Mississippi Supreme Court clearly held that there could be other circumstances which warrant a public policy exception. The case *sub judice* is one of these circumstances.

It is the public policy of Mississippi, and every state, for there to be a clean and fair political process without the intimidation and unlawful interference of

third parties like Academy and other large employers. Allowing large companies like Academy to interfere with the political process by threatening to terminate employees who did not vote how Academy wanted them to vote would threaten the very fabric of our democratic society. Indeed, large employers in small towns could control politics and render the democratic process useless and one-sided.

As held in *Laws*[3]*,* "Without question, the general rule is that there are situations justifying exceptions to the termination at will rule, as well there should be." *Laws*, 667 F. Supp. 342 at 348. Cleland respectfully requests that this Court act in the same manner as the District Court in *Laws* and find that Mississippi would recognize a public policy exception for termination of an employee because of his/hers political beliefs.  The Mississippi Supreme Court already carved out the first public policy exception to the employment-at-will doctrine in *McArn*, 626 So.2d 603, after the Northern District of Mississippi did so in *Laws*, 667 F.Supp. 342.

This Court need not carve out new law because the law is already established that public policy exceptions may be made to the often rigid and unforgiving employment-at-will doctrine in Mississippi. Cleland simply asks that this Court, following the guise of *Laws* and *McArn*, and in accordance with

---

[3] The Court in *Laws* followed the *Erie*-bound guess doctrine. (*Laws v. Aetna Finance Co.*, 667 F.Supp. 342 (N.D. Miss. 1987) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

*Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986), where the Fifth Circuit held, "We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best," find that Cleland may maintain an action for wrongful termination where Cleland was unlawfully terminated on election day because of his political affiliations and in clear violation of Mississippi law and public policy. To hold otherwise would force people to choose between a paycheck and their right to vote for the candidate of their choosing, in violation of Miss. Code Ann. § 79-1-9.

Several state courts have held that where an employee is discharged in violation of a statute prohibiting interference with an employee's political rights, an action for wrongful termination may be brought. *Davis v. Louisiana Computing Corp., et al.*, 394 So.2d 678 (La. COA 1981) (an employer may not control the political candidacy of its employees in violation of R.S. 23:961); *Vulcan Last Co., v. State*, 217 N.W. 412 (Wis. 1928) (unlawful for company to threaten employees who did not vote a certain way in election with termination or lower wages); *Lockheed Aircraft Corp. v. Superior Court of Los Angeles County*, 171 P.2d 21 (Cal. 1946) (employer may not use employees terms of employment control or alter the employee's political affairs in violation of statute); *Santiago v. People of Puerto Rico*, 154 F.2d 811 (P.R. 1946) (employee held liable for wrongful

termination in violation of statute prohibiting employee from interfering with political rights of an employee). Mississippi is no different.

The Mississippi legislature, in Miss. Code Ann. § 79-1-9, has already established that an employer shall not interfere or attempt to influence the political rights of their employees, and the Mississippi legislature has already declared that it is unlawful, and likewise against public policy, for an employer to do so. Academy has clearly violated this statute.

The District Court and Academy cite cases such as *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss. 1981) for the proposition that Mississippi courts would not adopt a public policy exception in the instant action. However, *Kelly* dealt with an employee who alleged that they were terminated for filing a worker's compensation claim. It should be noted that *Kelly* was decided more than a decade before *McArn*. The Court in *Kelly* held:

> …..if we adopted the public policy exception requested in this case, we would be expressing a public policy different from that expressed by the Legislature in our Workmen's Compensation Law. This public policy decision is not only a proper, but an exclusive, subject for the Legislature to consider.

> *Id.* at 877.

14

The Court in *Kelly* clearly chose not extend any public policy[4] exception to worker's compensation claims because the legislature had already laid out an extensive and <u>exclusive</u> policy in our State's Workmen's Compensation Law. By declaring any public policy exception in *Kelly*, the Court would have been altering what the legislature had created as an exclusive remedy in worker's compensation law. That is not the case in the present matter.

Both *Medina v. Mims Oil Co.,* 2005 WL 1629800 (N.D. Miss. July 11, 2005) and *Cook v. Wallot*, 2013 WL 1883522 (Miss. Ct. App. May 7, 2013), cited by the Court and Academy, dealt with far different factual circumstances and causes of action.

*Medina* involved a woman who was terminated for seeking health benefits. Unlike the present matter, nothing in *Medina* was even alleged to be unlawful or illegal, nor did the employer's actions tend to affect the public at large, but rather only affected the plaintiff. *Medina* at 1. Unlike *Medina*, Cleland was terminated in violation of Miss. Code. Ann. § 79-1-9. Again, the legislature has already declared

---

[4] Being a matter of first impression in Mississippi, the Court may look to *Hubbards v. Spokane County*, 146 Wash.2d 699, 50 P.3d 602 (2002), where the Washington Court laid out clear guidelines for wrongful discharge in violation of public policy holding that in order to show discharge in violation of public policy an employee must show:

(1) the existence of a clear public policy (clarity element);

(2) that discouraging the conduct in which they engaged would jeopardize the public policy (jeopardy element);

(3) that the public-policy-linked conduct caused the dismissal (causation element); and

(4) the defendant must not be able to offer an overriding justification for the dismissal (absence of justification element).

*Hubbards v. Spokane County*, 146 Wash.2d 699, 707, 50 P.3d 602 (2002).

that it is unlawful for an employer to interfere with the political rights of an employee, and the political process extends well beyond the employer-employee relationship. There can be no argument that interfering with the political process does not affect the public at large and should, therefore, be a public policy concern.

Accordingly, the Court's decision in *Cook* was not based solely upon any extension of the public policy extension in regards to an at will termination of an employee. Instead, *Cook* sought the extension "because his actions are analogous to the actions of shareholders and employees that expose criminal activities." *Cook* at 6. The Court held, "That may be true, but such extension of the public-policy exception would have to be extended by the Mississippi Supreme Court. As Cook is not a member of any recognized protected class, nor was he engaged in a protected activity, we are unable to see how he can prove any see of facts that can support a claim for unlawful retaliation." *Id*. Cook was not an employee or shareholder of the Military Order of the Purple Heart (MOPH) and therefore, Cook lacked standing to bring a retaliation suit. *Id*. Cleland has standing as an employee of Academy to bring this action.

The Court should do "that which we think the Mississippi Supreme Court would deem best" *Jackson,* 781 F.2d at 397, and find that Mississippi would recognize a public policy exception for an employee wrongfully terminated for his

political views and Defendants' interference with Cleland's political rights. To hold otherwise would tear at the fabric of our democratic society.

Large corporations like Academy can not be allowed to influence its employees and threaten employees with termination for supporting select political candidates. Public policy supports an action by Cleland for wrongful termination against Academy.

## ARGUMENT II.

**PURSUANT TO *McARN V. BRUCE ALLIED TERMINIX,* WHETHER CLELAND MUST PLEAD WITH SPECIFICITY THE LEGAL NAME OF THE ILLEGAL ACT, AND WHETHER CLELAND SHOULD BE ALLOWED TO AMEND HIS COMPLAINT TO SPECIFICALLY ALLEGE OTHER ILLEGAL ACTS.**

### A. Framework for a Retaliatory Discharge Claim Under Mississippi Law.

 Mississippi is an employment-at-will state such that an employee may be terminated for any reason, a wrong reason or no reason at all. *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874-75 (Miss. 1981). However, the Mississippi Supreme Court carved out a public policy exception to the general employment-at-will rule in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993). As a matter of Mississippi public policy, an employee may not be terminated for reporting illegal activity or refusing to participate in illegal activity. *McArn*, 626 So. 2d at 607. The *McArn* Court held that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the

17

employment at will doctrine from bringing action in tort for damages against his employer." *Id.*

In order to prevail on a *McArn* claim for retaliatory discharge, the employee must show that the action the employee reported was criminally illegal. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir. 2005). However, application of the *McArn* exception does not require proof that a crime was committed or a person convicted. *Hammons v. Fleetwood Homes of Miss.*, Inc., 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (citing *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 443 (Miss. 1999)). The *Hammons* Court held that:

> Applicability of the [*McArn*] exception does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties.
>
> *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004)(citing *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 443 (Miss. 1999)).

A claim for discharge in violation of public policy lies against the employer only. *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 358 (Miss. 2008) (answering certified question). A co-employee is not individually liable for a *McArn* claim. *Decarlo*, 989 So. 2d at 358.

## B. The Conduct Which Cleland Refused to do and Reported Was Criminally Illegal.

At this point in litigation, the allegations in the Complaint must be accepted as true and that Tenney requested Cleland alter information on the ATF Form 4473, a form required in order for an individual to purchase a firearm from Academy. ROA 13-60838 260-265. Cleland refused to commit such an illegal act and reported Tenney's request to Academy's corporate human resources office in an August 18, 2012 complaint. Shortly after the email, Cleland was given a plan for improvement and eventually terminated.

It is inarguable that requesting Cleland to alter the information on an ATF Form 4473 is criminally illegal under both state and federal law. Altering the information on a Form 4473 is illegal under federal law pursuant to 18 U.S.C.A. § 922(m)[5]. Under state law, at the very least, a fact question exists as to whether this request by Tenney was criminal as a forgery[6] under Miss. Code Ann. § 97-21-59 or

---

[5] "It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder." 18 U.S.C.A. § 922(m).

[6] Similarly, altering paperwork and passing it off as legitimate is criminally illegal under Mississippi law. The crime of "uttering a counterfeit instrument or coin," known generally as "uttering a forgery," is as follows:

> Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery. Miss. Code Ann. § 97-21-59. The elements of this crime are: (1) that the defendant published or uttered as true, (2) a forged, altered, or counterfeit

subornation of perjury pursuant to Miss. Code Ann. § 97-9-63. Regardless of the label placed upon the request, Tenney requested that Cleland commit an illegal act, in part, which Cleland refused to do, which Cleland reported to Academy, and which leg to Cleland's termination. Cleland does not have to prove a crime was committed. See *Hammons* at 360.

The District Court erred by making a factual determination, stating, "The Amended Complaint is woefully lacking of any facts leading to the reasonable inference that Tenney intended to defraud anyone." ROA 13-60838 236. In denying Cleland's Motion For Leave to Amend, the District Court then stated, "It is implausible that Tenney intended to injure anyone by trickery or deceit in requesting that Cleland correct customer errors on ATF Forms." ROA 13-60838 237.[7] There exist a myriad of problems with this rationale. First, as explained by the Courts in *Hammons* and *Paracelsus,* Cleland was not required to see that his employer be convicted of a crime in order to succeed on a *McArn* claim. The law does not require Cleland to prove each element of a crime beyond a reasonable doubt. Rather, Cleland is merely required to plead that he was terminated because

---

instrument, (3) knowing the instrument to be forged, altered, or counterfeited, (4) with the intent to defraud. *Duhart v. State*, 927 So. 2d 768, 775 (Miss. Ct. App. 2006). A party may be guilty of uttering a forgery where the party attempts to pass an altered document as true and unaltered. *Nelson v. State*, 32 So. 3d 534 (Miss. Ct. App. 2009).

Uttering a forgery is also a crime which warrants the imposition of criminal penalties. Miss. Code Ann. § 97-21-59; Miss. Code Ann. § 97-21-33.

[7] These documents are signed under the penalty of perjury and shall not be altered in accordance with federal law.

he reported conduct which, if proven, could warrant the imposition of criminal penalties, rather than conduct which was merely amoral, unethical or civilly actionable. Cleland met his burden by reporting conduct which could be criminally illegal.

The District Court's reasoning that the conduct Cleland reported might not have been a forgery, or was only to correct customer errors, also turns the motion to dismiss standard on its head. The District Court was required to draw all reasonable inferences from the evidence in favor of Cleland, as the non-movant. *See, e.g., Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir. 1993). While lack of intent on the part of Tenney might be plausible, though suspicious, explanations for the conduct of Tenney, these are far from the only plausible inferences possible from the Record. A jury could infer, as Cleland did, that Tenney was requesting Cleland to commit illegal acts, which could criminally jeopardize customers if the altered documents were to ever be used against a customer, should the alterations contain false information. The District Court misapplied the standard by drawing inferences in this regard in favor of Tenney and Academy rather than in favor of Cleland. This conclusion was for the fact-finder.

A jury could well find that the conduct Cleland reported was conduct of the sort that is criminally illegal under Mississippi and/or Federal law. Indeed, this conclusion is inescapable from the Record in this case.

Accordingly, the District Court erred in dismissing Cleland's *McArn* claims against Academy, because the District Court found that conduct was not a profery. The acts which Cleland refused to commit were criminal.

In the words of William Shakespeare, "What's in a name? That which we call a rose, by any other name, would smell as sweet." *Romeo and Juliet*, Act II Scene 2.

## ARGUMENT III.

**WHETHER CLELAND SHOULD BE ALLOWED TO AMEND HIS COMPLAINT TO STATE A CLAIM AGAINST INDIVIDUAL DEFENDANT LOUIS TENNEY WHERE SAID AMENDED COMPLAINT WOULD DESTROY DIVERSITY AND REMAND THE MATTER TO STATE COURT.**

### A. Framework for Claim of Tortious Interference

Under Mississippi law, the elements of a claim for tortious interference with employment are:

1) the acts were intentional and willful;
2) that they were calculated to cause damages to the plaintiffs in their lawful business;
3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and
4) that actual loss occurred.

*Collins v. Collins*, 625 So.2d 786, 790 (Miss.1993)

In *Levens v. Campbell*, 733 So.2d 753, 760 -761 (Miss.1999), the Court held that an at-will employee may maintain a cause of action for tortious interference with employment. *Levens*, 733 So. 2d at 760.

The Mississippi Supreme Court has held that a cause of action for tortious interference with a contract against an individual defendant generally will lie against one who maliciously interferes with a valid and enforceable contract for reasons unrelated to job performance. *Collins v. Collins*, 625 So.2d 786, 790 (Miss.1993). In *Shaw v. Burchfield*, 481 So.2d 247 (Miss. 1985), the Court held that Mississippi law recognizes a right of recovery for one whose contractual relationship has been tortuously interfered with, finding that:

> One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract.

> *Id*. at 254-55.

However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Id*. at 255; *Levens*, 733 So.2d at 759-60.

A plaintiff need not establish an independent tort to satisfy the "unlawful purpose" prong of a tortious interference claim. *Gibson v. Estes*, 338 Fed. Appx.

23

476, 477 (5th Cir. 2009). In *Gibson*, this Court held that a City mayor could be individually liable for tortious interference with a police chief's employment, when the mayor caused a police chief to be fired, not because of reasons of job performance, but because the police chief had investigated the mayor's son. *Gibson*, 338 Fed. Appx. at 244.

Cleland has pled that Tenney interfered with Cleland's employment relationship because:

a) Cleland reported Tenney's illegal request;

b) Cleland was a conservative and refused to support Tenney's chosen political candidates in the November 2012 elections.

A plaintiff is not required to produce direct-evidence or show that a defendant admitted liability in order to make a claim. *Waltman v. International Paper Co.*, 875 F.2d 468, 482 (5th Cir. 1989). Rather, a plaintiff may rely on circumstantial evidence from which the fact-finder can infer the elements of the claim. *See Waltman*, 875 F.2d at 482. In *Waltman*, the Fifth Circuit explained:

> In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent . . . Often motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the fact-finder.
>
> *Id.*

24

In denying Cleland's Motion to Remand, and ultimately dismissing Tenney as a Defendant, the District Court stated, "The inference that is attempted to be made by Cleland is that Tenney told things to Academy that were untrue and malicious with the goal of causing Cleland to lose his job. This Court has seen nothing that indicates that and *ipse lixit* is not sufficient to establish the claim." ROA 13-60838 179. Again, the District Court makes factual determinations in favor of Academy, despite only having pleadings available. The District Court again turns the motion to dismiss standard on its head. The District Court was required to draw all reasonable inferences from the evidence in favor of Cleland, as the non-movant. *See,* e.g., *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir. 1993). Cleland attempted to rectify any deficiencies by filing an amended complaint, but the District Court refused to allow amendments to Cleland's claims against Tenney for tortious interference.

The District Court improperly analyzed and dismissed the claim, and refused to allow Cleland to amend his Complaint to alleviate the District Court's concerns. The District Court also erred by not analyzing the amendment under the standard identified in *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013). Cleland should have been allowed to amend his Complaint to include a non-diverse party because:

1) The amendment was not meant to defeat diversity jurisdiction;

2) Cleland was not dilatory in asking for an amendment;

3) Forcing Cleland to pursue two separate actions in two separate courts would have injured and prejudiced Cleland; and

4) Neither Academy nor Tenney would be prejudiced by the Amended Complaint.

*See Priester* at 679.

The District Court identified, but failed to address, the standards identified in *Priester*. The District Court seemed to state in its Order that Cleland should pursue a separate action in State Court against Tenney, although the action would be nearly identical to Cleland's Federal Actions against Academy, and severely burdensome and prejudicial to Cleland.

## B. Issues of intent are for a trier of fact

When a fact-finder can find either a lawful motive or an unlawful motive, it is "for the jury to decide." *Schroeder v. Greater New Orleans Federal Credit Union*, 664 F.3d 1016, 1025 (5th Cir. 2011). As explained by Justice Rehnquist in *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711 (1983):

> There will seldom be "eyewitness" testimony as to the employer's mental processes." "The law often obliges finders of fact to inquire into a person's state of mind. As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago:
>
>> The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what

26

> the state of a man's mind at a particular time is, but if it can
> be ascertained it is as much a fact as anything else."
> *Eddington v. Fitzmaurice*, 29 Ch.Div. 459, 483 (1885).

*Aikens*, 460 U.S. at 716-17.

From the evidence in the record, a jury could find that Tenney is liable for tortuously interfering with Cleland's employment, and, therefore, Cleland should have been allowed to amend his Complaint to include and better detail his claims against Tenney. Accordingly, the District Court erred in dismissing those claims and refusing to allow Cleland to amend his complaint.

## <u>CONCLUSION</u>

Eddie Cleland was terminated because he would not support certain political candidates in the November 2012 elections and because he reported and refused to participate in illegal activities.

Cleland pled that conduct was illegal and that he was wrongfully terminated because of his refusal. The District Court erred by dismissing Cleland's claims because of a mere label, forgery.

The District Court also erred by refusing to allow Cleland to amend his Complaint and include claims against Tenney for tortious interference with employment.

The District Court further erred by not finding that Mississippi would recognize a public policy exception for an individual terminated for refusing to

support certain political candidates. Should this Court find Mississippi would not recognize such an exception, this Court should certify the question to the Mississippi Supreme Court. Accordingly, the grant of Defendants-Appellee's Motion to Dismiss should be reversed.

RESPECTFULLY SUBMITTED, this the 3rd day of February, 2014.

**EDDIE CLELAND**
PLAINTIFF - APPELLANT


_____/s/___*Daniel M. Waide*_____
DANIEL M. WAIDE, MSB #103543


DANIEL M. WAIDE, MSB #103543
SAMUEL S. MCHARD, MSB #100295
MCHARD & ASSOCIATES, PLLC
15 MILBRANCH RD.
HATTIESBURG, MS 39402
T: 601.450.1715; F: 601.450.1719
dwaide@mchardlaw.com
smchard@mchardlaw.com

Attorneys for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,583 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word 2010, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by Fifth Circuit Rule 32.1).

3. The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5), or the type style requirements of Fed. R. App. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 3rd day of February, 2014.

*/s/ Daniel M. Waide*
DANIEL M. WAIDE
Attorney for Appellant

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney for the Appellant, do hereby certify that on this date, I have electronically filed the foregoing Brief of Appellant with the Clerk of the Fifth Circuit Court of Appeals using the FEC system which sent notification of such to the following:

Christopher Dove
Johanna F. Norvell (*pro hac vice admitted*)
Texas Bar No. 00796549
Locke Lord LLP
600 Travis, JP Morgan Chase Tower
Suite 2800
Houston, Texas 77002

J. Randall Patterson (Miss. Bar No. 9012)
Zachary B. Busey (Miss. Bar No. 103793)
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi 39211

This the 3rd day of February, 2014.

By: */s/ Daniel M. Waide*
DANIEL M. WAIDE

OF COUNSEL:

DANIEL M. WAIDE, MSB #103543
SAMUEL S. McHARD, MSB #100295
McHARD & ASSOCIATES, PLLC
15 MILBRANCH ROAD
HATTIESBURG, MS 39402
T: 601-450-1715 F: 601-450-1719
dwaide@mchardlaw.com